UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALWA ZOURA,

     Plaintiff,                       Civil Action No. 16-13055

v.                                 HON. TERRENCE G. BERG
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Salwa Zoura ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On February 6, 2014, Plaintiff file an applications for SSI and DIB, alleging disability as of December 25, 2007[1] (Tr. 143, 155).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 10, 2015 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 115).  Plaintiff, represented by attorney Randall Mansour, testified (Tr. 120-139), as did Vocational Expert ("VE") Scott Silver (Tr. 139-141).  On July 14, 2015, ALJ  Scallen found that Plaintiff was not disabled (Tr. 21).  On June 24, 2016, the Appeals Council denied review (Tr. 26-29).  Plaintiff filed for judicial review of the final decision on August 23, 2016.

## BACKGROUND FACTS

Plaintiff, born August 15, 1953, was 57 when the ALJ issued his decision (Tr. 24, 117).  She completed the equivalent of sixth grade and worked previously as a machine operator for a manufacturing supplier (Tr. 179).  She alleges disability due to hand pain and numbness; severe leg and back pain; diabetes mellitus; arthritis; and sleep disturbances (Tr. 178).

### A.    Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset of disability date to March 8, 2011* (Tr. 118).

---

[1]The onset of disability date was later amended to March 8, 2011 (Tr. 14).

Plaintiff then offered the following testimony with the help of an interpreter:

She left school after sixth grade in her native country of Iraq (Tr. 120). She spoke Chaldean, Arabic, and English (Tr. 120). She became an America resident in 1995 and worked as a machine operator for the next 12 years (Tr. 121). The work included lifting items of approximately 40 pounds into boxes (Tr. 122). She stopped working in 2007 due to lower extremity and arm pain and the inability to stand for extended periods (Tr. 122). Beginning in 2006, she treated her foot pain with injections (Tr. 123-124). Her upper and lower extremity pain was "seven to eight" on a scale of one to ten (Tr. 124). However, she experienced good results from pain medication and did not experience medication side effects (Tr. 125).

In addition to the extremity pain, she experienced high cholesterol, arthritis, diabetes, and back pain (Tr. 126). She experienced level "eight" back pain (Tr. 126). The back pain radiated into her lower extremities (Tr. 126). The arthritis caused extremity pain and the diabetes caused dizziness on a semi-daily basis (Tr. 127). She experienced relief from dizziness 15 minutes after taking medication (Tr. 128). She also experienced sleeping problems as a result of the back pain and did not sleep more than four hours a night (Tr. 128). She had not received mental health treatment or been prescribed psychotropic medication (Tr. 128).

Plaintiff was unable to carry more than four pounds, sit for more than 20 minutes, stand for more than 10, or walk for more than 15 (Tr. 128). She stood 5' 2" and weighed 166 pounds (Tr. 129). She was able to descend but not climb stairs (Tr. 130). She was able to bend but was unable to kneel, crawl, or crouch (Tr. 130). She did not experience upper extremity range of motion limitations but generally required both hands to carry a glass (Tr. 131). Plaintiff shared the household chores with her husband (Tr. 132). She was able to drive and read road signs (Tr. 132). She was able to grocery shop (Tr. 133). On a typical day, she would take her medication upon arising, check her blood sugar levels, and watch television (Tr. 133).

In response to questioning by her attorney, Plaintiff testified that if her former job of machine operator were offered to her, she would be unable to take it due to leg pain, arthritis, diabetes, and back problems (Tr. 134). Her favorite position was sitting (Tr. 135). She reiterated that the back pain radiated into her lower extremities (Tr. 135). The radiating lower extremity pain, worse on the left, created mobility problems (Tr. 135). She had no trouble opening or closing her hands, but she experienced daily hand swelling (Tr. 135-136). She obtained good results from medication (Tr. 136). She was forced to take breaks after performing household chores after 15 to 20 minutes due to leg and hand pain (Tr. 137). She was accompanied by her husband while making grocery shopping trips but was able to make short, simple shopping trips on her own (Tr. 137-138). She did not experience problems in grooming or dressing so long as she took pain pills before getting into the shower (Tr. 138).

She attended church services about two Sundays a month (Tr. 138).

### B. Medical Evidence[2]

### 1. Treating Sources

October, 2007 treating records by Purus Ramiz, M.D. note Plaintiff's report of bilateral knee pain (Tr. 220). December, 2007 records note that the condition had resolved (Tr. 234). In June, 2008, Plaintiff reported neck and right shoulder pain (Tr. 226). September, 2008 records show pre-diabetes glucose levels (Tr. 245). November, 2009 treating records by Dr. Ramiz note crepitus in both knees (Tr. 218). Dr. Ramiz's November, 2010 records note knee swelling (Tr. 222). The examination was otherwise negative (Tr. 222-223). X-rays of the bilateral knees were negative for significant degenerative disease or effusion (Tr. 252). In August, 2011, Plaintiff sought treatment for a rash resulting from poison ivy (Tr. 267). Examination records show otherwise normal results (Tr. 266).

In October, 2012 treating records by Neil Jaddou, M.D. note a diagnosis of diabetes and hyperlipidemia (Tr. 369). In April, 2013, Plaintiff sought treatment for a chest cold (Tr. 291, 366). Dr. Jaddou noted a past medical history of osteoarthritis, Vitamin D deficiency, diabetes (uncomplicated), and hyperlipidemia (Tr. 291). He noted that Plaintiff's medication was limited to Zocor and Metformin (Tr. 293). Dr. Jaddou's June, 2013 records note Plaintiff's report of level "five" "persistent knee pain" (Tr. 294, 364). She reported that she

---

[2]Treatment records pre-dating the amended alleged onset of disability date of March 8, 2011, where discussed, are included for background purposes only.

took Naproxen "as needed" for knee pain (Tr. 294). Dr. Jaddou stated that the physical exam was "essentially normal" (Tr. 295). In October, 2013, he noted the absence of either leg weakness or swelling (Tr. 297, 362). A mental status examination was unremarkable (Tr. 299). A December, 2013 review of the lower extremities showed with a normal range of motion and the absence of pain (Tr. 300, 302). A mental status examination was also unremarkable (Tr. 301).

Dr. Jaddou's January, 2014 treating records state that Plaintiff's medication was limited to Zocor and Metformin (Tr. 357). In February, 2014, Plaintiff reported lower back pain and stiffness after sitting for the past four days (Tr. 352-353). She reported that she occasionally used a treadmill (Tr. 352). Later the same month, Dr. Jaddou completed a physical residual functional capacity questionnaire, noting that despite diagnoses of sciatica, osteoarthritis, and diabetes, Plaintiff had a "healthy" prognosis with controlled diabetes (Tr. 307). He found that due to knee pain, Plaintiff was unable to sit, stand, or walk for even two hours in an eight-hour workday (Tr. 308). He stated that the findings were supported by diagnostic testing (Tr. 307). He found that Plaintiff required a sit/stand option and was restricted to work allowing her to elevate her legs (Tr. 308). He limited her to lifting 20 pounds on rare occasions and less than 10 pounds occasionally (Tr. 308). He found that she could hold her head in a static position on a rare basis and look up occasionally (Tr. 308). He limited her to occasional climbing of stairs; rare twisting and stooping; and precluded from all crouching, squatting, and use of ladders (Tr. 309). Dr. Jaddou also limited Plaintiff

to frequent manipulative activities but only occasional reaching (Tr. 309). He found that Plaintiff would miss work around four days a month (Tr. 309).

In September, 2014, Samer Homisha, M.D. prescribed Naproxen as needed for arthritis (Tr. 334). He observed the absence of joint pain, a normal gait, and normal strength and tone in all extremities and(Tr. 221-332, 334). The following month, Dr. Homisha noted normal muscle tone and strength and an unremarkable mental status examination including normal cognitive functioning (Tr. 327). Plaintiff reported hand pain but that she was "feeling well" (Tr. 325-326). Dr. Homisha prescribed Indomethacine (Tr. 327). In December, 2014, Plaintiff sought treatment for itching, but again reported that she was "feeling well" (Tr. 322). She demonstrated normal muscle tone and strength in all extremities (Tr. 323). The following month, Plaintiff denied dizziness (Tr. 318). Notes from a February, 2015 diabetes check states that Plaintiff was again "feeling well" (Tr. 314). She exhibited normal cognitive function (Tr. 315).

### 2. Non-Treating Sources

In March, 2011, Jose Mari G. Jurado, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of arthritis and the inability to sit for more than 15 minutes, or stand or walk for more than 10 (Tr. 253). Plaintiff reported that she had finished 12th grade and currently lived with her husband in a single family home (Tr. 253). She reported that her daughter-in-law did the cooking and cleaning (Tr. 253). Plaintiff alleged balance problems (Tr. 253).

Dr. Jurado noted that Plaintiff was fully oriented (Tr. 254). A neurological examination was negative for abnormalities (Tr. 254, 258). Plaintiff exhibited full muscle strength and normal muscle tone in all extremities with range of motion limitations of the lumbar spine, shoulder, and hip (Tr. 254-255). Range of knee motion was normal (Tr. 257). Plaintiff alleged balance problems while squatting but was able to walk without a cane (Tr. 255). She exhibited an antalgic gait and reported "feeling dizzy" while bending (Tr. 258-259). Imaging studies of the lumbar spine and hips were wholly unremarkable (Tr. 261-262).

In February, 2012, Julia A. Czarnecki, MA, under the guidance of Nick Boneff, Ph.D., performed a mental status evaluation on behalf of the SSA, noting that Plaintiff was well dressed and was able to sit and rise from her chair without assistance (Tr. 278). Plaintiff reported memory problems, noting that she sometimes forgot that the tea kettle was on the stove and did not know when she came to the United States or how long she had been married (Tr. 278). She reported that she was depressed because her husband was "actively involved with another woman" although Plaintiff still lived with him (Tr. 279). She exhibited problems with simple calculations (Tr. 279). When asked what she would do in the event of a fire in her apartment or a theater, she replied that she "would sit in my house and I want to die" (Tr. 280).

Czarnecki concluded as follows:

> [Plaintiff] presents with symptoms of an adjustment reaction with disturbance
> of mood secondary to situational stressors, marital dysfunction, extramarital
> affairs as well as her struggles with pain and arthritis. It was difficult to make
> a determination with regard to her ability to do work related activities because
> of her slowed response style and seeming[] exaggeration of her cognitive and
> memory problems. . . . [F]urther medical evidence and objective data would
> be required (Tr. 280).

Czarnecki noted that Plaintiff denied head injury, brain trauma, or other symptoms "to explain her memory loss" (Tr. 280). She found that Plaintiff experienced an "adjustment reaction with disturbance of mood," due to unemployment, her husband's extramarital affairs, and pain (Tr. 280). She assigned Plaintiff a GAF of 50[3] (Tr. 280).

Later the same month, Ernesto Bedia, M.D. performed a physical consultative examination on behalf of the SSA, noting Plaintiff's report of long-term knee and ankle pain (Tr. 282). She reported that she took Naproxen but had never had an x-ray (Tr. 282). She indicated that she started oral medication (Metformin) for diabetes in the previous year and had been told by her doctor that she was "doing well" (Tr. 282). She denied diabetes complications (Tr. 282). Dr. Bedia observed a stable gait, no problems bending, and a full range of motion (Tr. 284-288). Plaintiff denied dizziness or balance problems (Tr. 283). She appeared alert and fully oriented (Tr. 283).

---

[3]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34 (4th ed. 2000).

In March, 2014, Muhammad Khalid, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that the conditions of diabetes mellitus, joint dysfunction, and affective disorders were non-severe (Tr. 44). The same day, psychiatrist Zara Yousuf, M.D. reviewed the same records on behalf of the SSA, finding that Plaintiff experienced only mild limitation in activities of daily living and concentration, persistence, or pace, and no limitation in social functioning (Tr. 45).

## C.    Vocational Expert Testimony

VE Scott Silver classified Plaintiff's past relevant work as a machine operator as semiskilled and exertionally medium[4] (Tr. 139). The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [Light exertional level. Also limited to occasional climbing of stairs and ramps, no climbing or ropes or scaffolds. Further limited to occasional balancing, stooping, kneeling, crouching and crawling. Also limited to frequent reaching, kneeling, and fingering. Avoid concentrated exposure to unprotected heights and moving machinery. With those limitations alone, could she do her past work? (Tr. 140).

Based on the above restrictions, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the light, unskilled jobs

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

of an usher (109,000 nationally); office helper (98,000); and cleaner/housekeeper (168,000) (Tr. 140). The VE testified that if the individual were additionally limited to work with a sit/stand option, the usher and housekeeping jobs would be eliminated (Tr. 140). He testified that if the hypothetical individual were limited to sedentary work, Plaintiff's age would direct a finding of disability[5] (Tr. 141).

### D. The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the medically determinable impairments of diabetes mellitus, vitamin D deficiency, osteoarthritis, and an adjustment reaction with disturbance of mood (Tr. 16-17). However, he found that none of the conditions "significantly limited" Plaintiff's ability to perform basic work-related activities for twelve consecutive months (Tr. 17)(*citing* SSR 85-28, 1985 WL 56856 (1985)).

The ALJ discounted Plaintiff's allegations of significant work-related impairment (Tr. 18). He noted that "the medical evidence of record show[ed] no basis" for Plaintiff's claims, noting that "[t]he overwhelming majority of physical examinations have been normal with no serious symptoms" (Tr. 18). The ALJ found that while one consultative examiner (Dr. Jurado) noted a reduced range of motion and an antalgic gait, the findings were based on

_____

[5]

Plaintiff, 52, at the amended alleged onset of disability, is categorized as an individual "closely approaching advanced age" under the Regulations. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. In the "closely approaching" age group (50 to 55), a finding that she was limited to exertionally sedentary, unskilled work would generally result in a disability finding. *Id.*

-11-

Plaintiff subjective complaints (Tr. 18). The ALJ noted that followup treating and consultative records were unremarkable (Tr. 18). He observed that while Plaintiff complained of knee pain in June, 2013, treating records from the end of the same year show that the condition had resolved (Tr. 18). The ALJ noted that Plaintiff did not complain of pain again until February, 2014 (Tr. 18). He rejected Dr. Jaddou's February, 2014 "disability" opinion on the basis that it was not supported by either the treating records or imaging studies (Tr. 19).

Citing Dr. Yousuf's March, 2014 assessment, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and concentration, persistence, or pace but no limitation in social functioning (Tr. 20-21). He cited the consultative examiner's finding that Plaintiff exaggerated cognitive and memory problems (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff faults ALJ Scallen for ending the administrative analysis at Step Two, arguing that the record generously supports the finding that at least one of the medically determinable impairments created work-related limitation. *Plaintiff's Brief* at 12-17, *Docket #19,* Pg ID 437. She contends first that the ALJ failed to consider the objective medical evidence and her subjective complaints in finding her not disabled at Step Two. *Id.* at 12-14. Second, she argues that the ALJ's determination that her claims were not credible failed to take into account her allegations of limited daily activities. *Id.* at 15-17.

### A. The Step Two Determination - Basic Principles

At Step Two, an "impairment or combination of impairments ... [is] found 'not severe' and a finding of 'not disabled' is made ... when medical evidence establishes only a slight abnormality or [ ] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856,*3 (1985). "In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "The goal of the test is to 'screen out totally groundless claims.' " *Id.* (*citing Farris v. Secretary of Health & Human Services*, 773 F.2d 85, 89 (6th Cir. 1985)).

20 C.F.R. § 404.1522(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." See also SSR 85-28, *supra,* at *3. "Basic work activities" include the physical functions of "walking, standing, sitting" as well as the capacity for "seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting."

### B. Plaintiff' Arguments for Remand

Because resolution of whether the ALJ performed an adequate credibility determination is partially dispositive of Plaintiff's other argument for remand, her arguments are considered in reverse order.

### 1. The Credibility Determination (Argument 2)

Plaintiff contends that the ALJ erred by relying only on the objective medical evidence in discounting her claims of limitation. *Plaintiff's Brief* at 15. She argues, in effect, that the ALJ failed to consider her account of limitations in activities of daily living, use of medication, and other modalities of treatment in finding that she was not credible. *Id.*

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[6]  As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[7]  *Id.* However, a claimant's allegations of such limitations, standing alone, are generally

---

[6]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below.* Nonetheless, SSR 96-7p applies to the present determination, decided on August 20, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[7]

In addition to an analysis of the medical evidence, 20 C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination: "(i) . . . daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

insufficient to counter the ALJ's conclusion that her claims were not credible. "[T]he ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990).

Plaintiff's argument that the ALJ did not consider her allegations regarding her activities of daily living hinges on the second prong of SSR 96-7p. However, the ALJ's finding that the evidence did not show a severe impairment is well supported and explained. The ALJ noted that Plaintiff's regular activities included self-grooming, driving, preparing meals, and handling funds (Tr. 20). Plaintiff's contention that the ALJ erred by failing to provide a more extended discussion of her daily activities is not well taken. The daily activities are only one of several factors to be considered in adjudging credibility. § 404.1529(c)(3), *fn 7, above.*

Further, the ALJ acknowledged Plaintiff's allegations of arm, back, and leg pain, sleep disturbances, hand swelling, dizziness, and postural limitations (Tr. 18). However, he noted that Plaintiff reported "feeling well" at multiple treating examinations (Tr. 18, 325, 314). He cited February, 2012 consultative records by Dr. Bedia showing a normal gait and no orthopedic or neurologic difficulties (Tr. 18). As to the use of medication, the treating records shows that Plaintiff's rare complaints of body pain were well-controlled with non-narcotic products and taken only on an "as needed" basis (Tr. 294, 334). He noted that Czarnecki's consultative finding that Plaintiff exaggerated her cognitive and memory

problems was supported by numerous treating records showing a normal mental status (Tr. 20, 280).

The ALJ's findings are consistent with my own review of the treating and consultative records. While Plaintiff alleged that she was unable to walk for more than 15 minutes, she reported to Dr. Jaddou that she was using a treadmill for exercise as of January, 2014 (Tr. 352). Although Plaintiff received treatment for moderate knee pain in June, 2013, she did not seek treatment again until October, 2013 at which time, she exhibited no lower extremity limitations (Tr. 297). Plaintiff did not report back pain until January, 2014 (Tr. 357). The inference that Plaintiff did not experience significant body pain between June, 2013 and January, 2014 is support by the fact that her only prescribed medications as of January, 2014 were for the conditions of hyperlipidemia and diabetes (Tr. 357). The treating records show uniformly good mental status evaluations as to both alertness and cognitive functioning. As discussed below, the records created subsequent to Dr. Jaddou's "disability" opinion also include observations of good muscle tone, range of motion, and Plaintiff's denial of dizziness (Tr. 318, 323).

Because the ALJ's findings are well explained and supported by the lack of aggressive treatment, Plaintiff's statements to her treating sources, and the regular activities, the deference generally accorded the administrative credibility determination is appropriate in this case. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's credibility determinations about the claimant are to be given great weight").

## 2. The Objective Evidence (Argument 1)

For overlapping reasons, Plaintiff's argument that the ALJ "ignored ample medical evidence" in making the Step Two finding does not provide grounds for remand. *Plaintiff's Brief* at 12-14. She contends that the ALJ erred by failing to credit Dr. Jurado's March, 2011 consultative findings of an antalgic gait and Plaintiff's claim to Dr. Jurado that she felt "dizzy" while bending (Tr. 258-259). However, the ALJ noted that most of Dr. Jurado's findings were wholly normal (Tr. 18). The ALJ also noted that Dr. Jurado's finding of limitation appeared to be based on Plaintiff's allegations (Tr. 18). The ALJ further discounted Dr. Jurado's findings of limitation on the basis that the "other examination findings were unremarkable" (Tr. 18). He noted that Dr. Bedia's February, 2012 consultative examination showed no physical limitation (Tr. 18, 282-283).

Plaintiff's related argument that the discrepancies between Drs. Jurado and Bedia's consultative examination results require a remand for "additional clarification" is likewise unavailing. To be sure, an ALJ is authorized but not required to order additional testing "if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). However, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)(*citing* §§ 404.1517, 416.917)). It cannot be said that in the present case, the two consultative opinions were equally supported by the remainder of the record. Consistent with my own

review, the ALJ found that Dr. Jurado's findings of limitations were not only contradicted by Dr. Bedia's findings but the treating records (Tr. 18). Accordingly, the ALJ's decision to discount Dr. Jurado's findings in favor in Dr. Bedia's was well within his discretion.

Moreover, while Plaintiff does not address the ALJ's rejection of Dr. Jaddou's treating opinion of extreme physical limitation, Dr. Jaddou's own records and the treating evidence as a whole stand grossly odds with his opinion that Plaintiff was incapable of even sedentary work (Tr. 19, 307-309). As the ALJ pointed out, Dr. Jaddou's statement that his opinion was supported by diagnostic testing is unsupported by any of his treating records (Tr. 19, 307). While Dr. Jaddou found that Plaintiff was limited in the ability to hold her head in one position, not one of treating records suggest the need for such a limitation. Although Plaintiff alleged disability as of March, 2011, the transcript shows for the year of 2011, her care was limited to treatment for poison ivy. The records show that Plaintiff did not report knee pain until June, 2013 (Tr. 267, 294). Further, the June, 2013 knee pain appears to have resolved with the "as needed" use of non-narcotic medication. Plaintiff did not report back pain until February, 2014 (Tr. 352-253). September, 2014 treating records state that Plaintiff exhibited normal strength and muscle tone in all extremities and took Naproxen on an as needed basis only (Tr. 334).

Finally, Plaintiff argues that her need to take frequent breaks due to fatigue was not considered. *Plaintiff's Brief* at 14. However, the ALJ addressed her claim that she was unable to sit, stand, or walk for more than short periods and required breaks from household

chores every 15 minutes (Tr. 18). He observed however that "the medical evidence of record shows no basis" for her claims of limitation (Tr. 18). He noted that "the overwhelming majority" of physical examination had been normal "with no serious symptoms" (Tr. 18). He cited Plaintiff's multiple reports to her treating sources that she was doing well (Tr. 18). The treating records do not make reference to the need to take frequent rest periods.

Accordingly, the ALJ's Step Two conclusion that she did not experience significant work-related impairments does not warrant a remand.

The ALJ's determination that Plaintiff was not disabled at Step II is supported by substantial evidence, and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level. It should therefore not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.

1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 23, 2017          s/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

---

**CERTIFICATE OF SERVICE**

**I hereby certify on August 23, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 23, 2017.**

                                **s/Carolyn M. Ciesla**
                                **Case Manager for the**
                                **Honorable R. Steven Whalen**